IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

IN THE MATTER OF THE SEARCH AND
SEIZURE OF WHITE APPLE iPHONE,
VERIZON NO. 202-809-3264

Case No. _15-£601 JKS_

FILED _____ ENTERED
_____ LODGED _____ RECEIVED

APR 2 2 2015

AT GREENBELT
CLERK U.S. DISTRICT COURT
DISTRICT OF MARYLAND
_____ DEPUTY

### AFFIDAVIT IN SUPPORT OF AN
### APPLICATION UNDER RULE 41 FOR A
### WARRANT TO SEARCH AND SEIZE

I, Det. J. Bumbray, being first duly sworn, hereby depose and state as follows:

### INTRODUCTION AND AGENT BACKGROUND

1.     I make this affidavit in support of an application under Rule 41 of the Federal

Rules of Criminal Procedure for a search warrant authorizing the examination of property—an

electronic device—which is currently in the possession of Robert Bonsib, Esquire, 6411 Ivy

Lane, Suite 116, Greenbelt, Maryland, and the extraction from that property of electronically

stored information described in Attachment B.

2.     I am a detective with the United States Park Police, and have been since 2002.

My responsibilities include the investigation of all crimes as assigned to include homicides, sex

assaults, robberies and assaults.   The following set of facts and circumstances set forth in this

application are based on your affiant's personal knowledge, observations and investigation, and

statements relayed to me by other witnesses and police officers. This affidavit is intended to

show only that there is sufficient probable cause for the requested warrant and does not set forth

all of my knowledge about this matter.

### IDENTIFICATION OF THE DEVICE TO BE EXAMINED

3.      The property to be searched is a white iPhone, with Verizon telephone number 202-809-3264. The applied-for warrant would authorize the forensic examination of the Device for the purpose of identifying electronically stored data particularly described in Attachment B.

## PROBABLE CAUSE

4.      On March 20, 2015, U.S. Park Police received a report of a crash in which the car caught fire and fatally burned the driver, who was trapped in the car. The burned car was a Mustang. The striking vehicle, a grey Lincoln, Maryland tag # 4BT1996, was left at the scene when the occupants fled. Through interviews with witnesses, I learned that at approximately 0240 hours that morning, V-1 and V-2 were driving in two separate vehicles outbound on New York Avenue. They stopped at the traffic light at Bladensburg Road, Northeast, Washington, DC. V-1 was driving a black Ford Mustang and V-2 was driving a white Dodge Charger. While at the traffic light at Bladensburg Road, a grey Lincoln containing **ANTHONY LAMONT PAYNE ("PAYNE")** and **Vernon JAWARA EVANS ("EVANS")** inside stopped. **PAYNE** exited the driver seat and pointed a black handgun at V-1. **PAYNE** was described as a black male, 5'6" to 5'7" tall, college aged, wearing a grey/silver jacket, dark pants, long dreads and a tattoo on the left side of **PAYNE**'s face. V-1 drove through the red light and fled the area. **PAYNE** then pointed the handgun at V-2 in V-2's vehicle. V-2 drove through the light also and fled. **PAYNE** entered his vehicle and chased the two vehicles driven by V-1 and V-2 onto the northbound Baltimore-Washington Parkway, entering Maryland.

5.      The Lincoln driven by **PAYNE** intentionally rammed into the rear of the Mustang, causing the Mustang to roll over and crash, trapping the driver. The Mustang caught

fire and the driver died at the scene. Witnesses said that **PAYNE,** the driver of the Lincoln, fled the scene, but before fleeing, he used his cellphone to take at least one photograph.

6.      Shanelle Seante Ford, the registered owner of the Lincoln, told Park Police that **EVANS** told her he went to Providence Hospital in the District of Columbia for treatment after the crash. Park Police went to Providence Hospital. Hospital personnel said that both **PAYNE** and **EVANS** had come that morning for treatment of injuries they received in the crash. They said **PAYNE** and **EVANS** were with two women, one of whom matched the description of Shanelle Seante Ford (Ford). Ford also told Park Police officers that her cellphone number is 202-815-2346, and that her service provider is Verizon.

7.      I also spoke with **EVANS**. He confirmed that he and **PAYNE** went to Providence Hospital on March 20, 2015. He also gave Park Police his white Samsung Galaxy S3 cellphone, model number SCH-1535, SKU # SCH1535RWB, IMEI # 990001153675988, which is in the custody of the U.S. Park Police. His cellphone number is 305-807-0700.

8.      U.S. Park Police have received a communication from defense counsel, in which he indicated that he had been contacted by **PAYNE** and had the cellphone belonging to **PAYNE** in his office in Greenbelt, Maryland, and would turn it over pursuant to a search warrant.

9.      I am familiar with smartphones and their capacities to take photographs, send and receive text messages, emails and telephone calls and store that information. I believe the cellphone in question will contain evidence of the communications between **PAYNE, EVANS** and Ford.

## TECHNICAL TERMS

10.    Based on my training and experience, I use the following technical terms to convey the following meanings:

  a. Wireless telephone:  A wireless telephone (or mobile telephone, or cellular telephone) is a handheld wireless device used for voice and data communication through radio signals.  These telephones send signals through networks of transmitter/receivers, enabling communication with other wireless telephones or traditional "land line" telephones.  A wireless telephone usually contains a "call log," which records the telephone number, date, and time of calls made to and from the phone.  In addition to enabling voice communications, wireless telephones offer a broad range of capabilities.  These capabilities include: storing names and phone numbers in electronic "address books;" sending, receiving, and storing text messages and e-mail; taking, sending, receiving, and storing still photographs and moving video; storing and playing back audio files; storing dates, appointments, and other information on personal calendars; and accessing and downloading information from the Internet.  Wireless telephones may also include global positioning system ("GPS") technology for determining the location of the device.

  b. Digital camera:  A digital camera is a camera that records pictures as digital picture files, rather than by using photographic film.  Digital cameras use a variety of fixed and removable storage media to store their recorded images.  Images can usually be retrieved by connecting the camera to a computer or by connecting the removable storage medium to a separate reader.  Removable storage media include various types of flash memory cards or miniature hard

drives. Most digital cameras also include a screen for viewing the stored images. This storage media can contain any digital data, including data unrelated to photographs or videos.

c. GPS: A GPS navigation device uses the Global Positioning System to display its current location. It often contains records the locations where it has been. Some GPS navigation devices can give a user driving or walking directions to another location. These devices can contain records of the addresses or locations involved in such navigation. The Global Positioning System (generally abbreviated "GPS") consists of 24 NAVSTAR satellites orbiting the Earth. Each satellite contains an extremely accurate clock. Each satellite repeatedly transmits by radio a mathematical representation of the current time, combined with a special sequence of numbers. These signals are sent by radio, using specifications that are publicly available. A GPS antenna on Earth can receive those signals. When a GPS antenna receives signals from at least four satellites, a computer connected to that antenna can mathematically calculate the antenna's latitude, longitude, and sometimes altitude with a high level of precision.

11.     Based on my training, experience, and research, I know that the cellphones have capabilities that allow them to serve as wireless telephones, digital cameras, GPA navigation devices and message transmitters. In my training and experience, examining data stored on devices of this type can uncover, among other things, evidence that reveals or suggests who possessed or used the device, as well as communications among the users of the devices. This information can sometimes be recovered with forensics tools.

12.     *Forensic evidence.* As further described in Attachment B, this application seeks permission to locate not only electronically stored information that might serve as direct evidence of the crimes described on the warrant, but also forensic evidence that establishes how the Device was used, the purpose of its use, who used it, and when. There is probable cause to believe that this forensic electronic evidence might be on the Device because:

    a.  Data on the storage medium can provide evidence of a file that was once on the storage medium but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file). Forensic evidence on a device can also indicate who has used or controlled the device. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence.

    b.  A person with appropriate familiarity with how an electronic device works may, after examining this forensic evidence in its proper context, be able to draw conclusions about how electronic devices were used, the purpose of their use, who used them, and when.

    c.  The process of identifying the exact electronically stored information on a storage medium that are necessary to draw an accurate conclusion is a dynamic process. Electronic evidence is not always data that can be merely reviewed by a review team and passed along to investigators. Whether data stored on a computer is evidence may depend on other information stored on the computer and the application of knowledge about how a computer behaves. Therefore, contextual

information necessary to understand other evidence also falls within the scope of the warrant.

    d.  Further, in finding evidence of how a device was used, the purpose of its use, who used it, and when, sometimes it is necessary to establish that a particular thing is not present on a storage medium.

13.   *Nature of examination.* Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrant I am applying for would permit the examination of the device consistent with the warrant. The examination may require authorities to employ techniques, including but not limited to computer-assisted scans of the entire medium, that might expose many parts of the device to human inspection in order to determine whether it is evidence described by the warrant.

## CONCLUSION

14.   I submit that this affidavit supports probable cause for a search warrant authorizing the examination of the Device described in Attachment A to seek the items described in Attachment B.

## REQUEST FOR SEALING

15.     It is respectfully requested that this Court issue an order sealing, until further

order of the Court, all papers submitted in support of this application, including the application

and search warrant. I believe that sealing this document is necessary because the warrant is

relevant to an ongoing investigation into the criminal organizations as not all of the targets of this

investigation will be searched at this time. Based upon my training and experience, I have

learned that, online criminals actively search for criminal affidavits and search warrants via the

internet, and disseminate them to other online criminals as they deem appropriate, i.e., post them

publicly online through the carding forums. Premature disclosure of the contents of this affidavit

and related documents may have a significant and negative impact on the continuing

investigation and may severely jeopardize its effectiveness.

Respectfully submitted,

#153 USPP /cus

Det. J. Bumbray, U.S. Park Police
202-427-9922

Subscribed and sworn to before me
on 3/25/2015:

UNITED STATES MAGISTRATE JUDGE

## ATTACHMENT A

The property to be seized and searched is a WHITE APPLE iPHONE, VERIZON NO.
202-809-3264, currently located in private law offices at 6411 Ivy Lane, Suite 116, Greenbelt,
Maryland 20770.

This warrant authorizes the forensic examination of the Device for the purpose of
identifying the electronically stored information described in Attachment B.



## ATTACHMENT B

1.      All records on the Device described in Attachment A that relate to violations of 18 U.S.C. § 1112, including:

   a.  All evidence, photographs, records and communications relating to possession of a handgun; the crash on the Baltimore-Washington Parkway on March 20, 2015; the possession of the Lincoln with Maryland tag # 4BT1996.

   b.  The content of text messages beginning at noon 3/19/2015 until the present time.

2.      Evidence of user attribution showing who used or owned the Device at the time the things described in this warrant were created, edited, or deleted, such as logs, phonebooks, saved usernames and passwords, documents, and browsing history;

As used above, the terms "records" and "information" include all of the foregoing items of evidence in whatever form and by whatever means they may have been created or stored, including any form of computer or electronic storage (such as flash memory or other media that can store data) and any photographic form.